**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re Michael Bahary & Steven Bahary | ) | Case No. 11 B 41826 |
| Partnership, | ) | Chapter 11 |
| | ) | |
| Reorganized Debtor. | ) | Hon. Jacqueline P. Cox |

**Amended Memorandum Opinion on Motion For Rule to Show Cause (Dkt. No. 398)**

## I. Background

On September 29, 2014, the Reorganized Debtor, the Michael Bahary & Steven Bahary

Partnership ("Bahary" or "Debtor"), filed its *Motion to Reopen Case and for Rule to Show Cause*

("Motion") regarding conduct of Napleton Enterprises, LLC ("Napleton") and its attorney,

Rachel A. Gould.   Docket Number 398.   According to the Debtor, a lawsuit filed by its attorney

on Napleton's behalf in DuPage County, Illinois is proceeding in violation of a discharge

injunction and a Plan of reorganization confirmed herein on August 21, 2012.   On October 3,

2014, Banco Popular North America ("Banco") filed a motion to join the Debtor's Motion.

Docket Number 403.

On October 7, 2014, the case was reopened.   On October 10, 2014, this Court enjoined

the parties from proceeding with the DuPage County, Illinois case.   Docket Number 410.

On December 29, 2014, this Court allowed the Rule to Show Cause to issue, requiring Napleton and its attorney, Rachel A. Gould, to show cause why they should not be held in contempt for conduct inconsistent with the Debtor's discharge injunction and confirmed Plan of reorganization. The Court ruled therein that Napleton's asserted right of first refusal did not apply to the transactions herein. *See Order on Motion to Reopen and for Rule to Show Cause,* Docket Number 417, pp. 7-9.

On January 13, 2015, Napleton's motion for relief from the December 29, 2014 order was denied. Docket Number 423. *See In re Michael Bahary & Steven Bahary Partnership, Reorganized Debtor,* 523 B.R. 642 (Bankr. N.D. Ill. 2015). A hearing on the rule to show cause proceeded in January, 2015 to determine whether Napleton and Attorney Rachel A. Gould should be held in civil contempt for violating the discharge injunction and the August 21, 2012 order confirming the Debtor's Plan. 334 Grand Joint Venture, LLP ("GJV") filed its Motion to Intervene on January 22, 2015.

To hold a party in contempt, a court "must be able to point to a decree from the court which sets forth in specific detail an unequivocal command which the party in contempt violated." *Trade Well Int'l v. United Central Bank,* No. 14-1907, 2015 WL 535341, at *5 (7th Cir. Feb. 10, 2015). There must be clear and convincing evidence of either a knowing or intentional violation of the discharge injunction. *See In re Johnson,* 148 B.R. 532, 538 (Bankr. N.D. Ill. 1992) ("[I]n order to sustain a motion for civil contempt, the Court must find that the offending party knowingly violated a definite and specific court order."); *see In re Kewanee Boiler Corp.,* 297 B.R. 720, 736 (Bankr. N.D.Ill. 2003) ("To hold [a creditor] in contempt, [the debtor] must show that [the creditor] acted in willful violation of the discharge injunction."). To

-2-

violate the discharge injunction the creditor must have commenced or continued an action, employed process, or acted, to collect, recover or offset any debt that was subject to discharge. 11 U.S.C. § 524(a)(2).   Before contempt or a sanction can be issued, "[a]t a minimum, the court must be sure of both the factual and legal basis on which it is acting." *Trade Well Int'l,* 2015 WL 535341, at *6. The burden is on the debtor "to establish by clear and convincing evidence that creditor violated the post-discharge injunction." *In re Pincombe*, 256 B.R. 774, 782 (Bankr. N.D. Ill. 2000).

Here, the Court is less than certain that there is a factual or legal basis to support a finding of contempt.   Having previously held that Napleton had no claim to assert during Bahary's bankruptcy case because the transfer to Banco was not a desired sale to a bona fide party who made an offer to purchase the property, this Court cannot now find that there was a violation of the discharge injunction when Napleton attempted to collect on a debt that did not exist. *Bahary*, 523 B.R. at 648-49 ("[t]he right of first refusal covered neither the situation at hand, foreclosure by a mortgagee to realize on its collateral, nor a tax sale by a unit of government, nor any other common ways the Bahary Partnership could transfer or lose control of the property."). No debt existed to be discharged. At best, Napleton held an inchoate interest, which it had no grounds to enforce.   Because Napleton did not have notice of the bankruptcy case and the right of first refusal was not ripe, there are no grounds for findings of contempt. Neither Napleton nor its attorney Rachel A. Gould will be held in contempt or be found to have violated the discharge injunction. However, now that Napleton knows that its right of first refusal was of no consequence in the bankruptcy proceeding, this Court will order Napleton to dismiss certain parties from the DuPage County lawsuit with prejudice.

-3-

## II. General Jurisdiction

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(a) which provides that the district courts have original and exclusive jurisdiction of all cases under title 11, the Bankruptcy Code ("Code"). 28 U.S.C. § 157(a) allows the district courts to refer title 11 cases to the bankruptcy judges for their districts. The District Court for the Northern District of Illinois has promulgated Internal Operating Procedure 15(a) which refers its bankruptcy cases to the judges of this court.

As allowed by 28 U.S.C. § 157(b)(1), a bankruptcy judge to whom a case has been referred may enter final judgment on core proceedings arising in or under the Bankruptcy Code. "Arising under" jurisdiction covers matters for which a claim is made under a provision of title 11, such as claims for violation of the automatic stay under 11 U.S.C. § 362(k)(1). "Arising in" jurisdiction covers administrative matters that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy. *See Matter of Woods,* 825 F.2d 90, 96-97 (5th Cir. 1987). Proceedings that do not arise in a bankruptcy case or under title 11 but could affect the amount of property available for distribution or the allocation of property among creditors are noncore related matters. *Stern v. Marshall,* 131 S. Ct. 2594, 2604-05 (2011); *In re Xonics,* 813 F.2d 127, 131 (7th Cir. 1987).

The distinction between core and noncore proceedings is important because it defines the contours of a bankruptcy judge's power as either adjudicatory (core proceedings) or advisory (noncore proceedings) and determines whether the bankruptcy judge may or must abstain from hearing a matter. *Phar–Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1235 (3d Cir.1994)

(bankruptcy judge can enter judgment in core matters only unless parties consent to adjudication).

A bankruptcy judge may hear a matter that is not a core proceeding but that is otherwise related to a case under title 11. In those instances, the bankruptcy judge has to submit proposed findings of fact and conclusions of law to the district court; any final order or judgment has to be entered by the district court. 28 U.S.C. § 157(c)(1).

However, bankruptcy courts have core jurisdiction to interpret and enforce their injunctions. *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 917 (7th Cir. 2001). Proceedings flowing from a core matter, such as efforts to enforce and construe a confirmation order, are themselves core matters. *In re Williams*, 256 B.R. 885, 892 (8th Cir. B.A.P. 2001).

**A. Jurisdiction to Enforce Discharge**

In chapter 11 cases the Code provides that "[e]xcept as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan – (A) discharges the debtor from any debt that arose before the date of such confirmation . . . ." 11 U.S.C. § 1141(d)(1)(A). The Debtor's Second Amended Plan at Docket Number 310, confirmed on August 21, 2012, provides for a discharge of its pre-petition debts. Docket Number 349, p. 9.

Section 524(a), which governs the effect of a discharge, states that:

A discharge in a case under this title:
(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section . . . 1141 . . . of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an
action, the employment of process, or an act, to collect, recover or offset any such
debt as a personal liability of the debtor, whether or not discharge of such debt is
waived . . .

11 U.S.C. § 524(a)(1)–(2).

Pursuant to § 103(a) of the Code, chapters 1, 3, and 5 of the Code apply in cases filed
under chapters 7, 11, 12 or 13. For that reason, § 524's discharge injunction applies to this
chapter 11 case.

Proceedings to enforce the statutory injunction under § 524(a)(2) are core proceedings
under 28 U.S.C § 157(b)(2)(O) - "other proceedings affecting the liquidation of the assets of the
estate or the adjustment of the debtor-creditor . . . relationship . . . ." Violations of § 524(a)(2)
are punishable or otherwise enforceable by judges using authority under § 105(a) of the Code.
*In re Hardy*, 97 F.3d 1384, 1389–90 (11th Cir. 1996); *In re Jacobs*, 149 B.R. 983, 989 (Bankr.
N.D. Okla.1993). The Seventh Circuit ruled in *Cox* that a bankruptcy court is the best forum to
deal with cases involving violations of the discharge order. *Cox*, 239 F.3d at 916. Indeed,
debtors would find little comfort in filing a bankruptcy case in a court that lacked jurisdiction to
enforce § 524(a)(2). *See Matter of Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 6 F.3d
1184, 1194 (7th Cir.1993) (making a similar observation regarding an injunction order issued
under the Bankruptcy Act: "[t]he resources of a reorganized company should not be squandered
litigating a claim in state court if the basis for the claim may implicate an earlier discharge
order."). Core jurisdiction lies herein to determine whether Napleton and its attorney violated
§ 524(a)(2) of the Bankruptcy Code by pursuing the state court action against Bahary. *See In re
Lazy Days' RV Center, Inc.*, 724 F.3d 418, 423 (3d Cir. 2013) (bankruptcy court found to have

-6-

authority to reopen chapter 11 case to interpret settlement agreement incorporated into confirmed reorganization plan).

## III. Facts

In February, 2004, Napleton was the beneficial owner of real estate commonly known as 334 Grand Avenue, Elmhurst, Illinois ("the Grand Avenue Property"). Title to the Grand Avenue Property was held in a land trust; Standard Bank and Trust Company was the trustee. On February 24, 2004, Napleton Enterprises, LLC, not the trustee, entered into an agreement to sell ("Sale Agreement") the Grand Avenue Property to Windy City Auto Group Corporation ("Windy City"). Paragraph R-4 of that agreement provided the Seller, the land trust, a right of first refusal. The relevant part of the right of first refusal provides that:

> R-4 Grant of Right of First Refusal. Seller is hereby granted a right of first refusal with respect to the subject property and/or any business owned by Purchaser and operating within the subject premises and/or any assets located thereon (the "Sale Property") only as follows:
>
> > A. If purchaser desires to sell the Sale Property or any part thereof and received from some third party a bona fide offer for the purchase thereof Purchaser shall disclose the terms of such offer to Seller, in writing, within five (5) days following the receipt of the offer by Purchaser.
> >
> > B. Seller shall have seven (7) days after receiving notice of the terms of the offer within which to elect to exercise his right to purchase the Sale Property on the identical terms to those offered by the third party. In the event Seller fails to notify Purchaser in writing of its election to exercise such right within said time Seller shall have waived such right and no further obligations shall be required.

Napleton Enterprises LLC's and Rachel A. Gould's Ex. 1, Rider B, ¶ R-4.

According to Napleton's Verified Complaint in Chancery for Equitable Relief and Damages filed on June 30, 2014, in the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois, case number 2014 CH 001212, it conveyed the Grand Avenue Property to Bahary (as a nominee of Windy City) by deed executed by the land trust on April 19, 2004. Banco provided Bahary with a loan for the purchase of the Grand Avenue Property. In exchange Bahary granted Banco a mortgage on the property.

On January 20, 2006, nearly two years after execution of the Sale Agreement, Napleton recorded a Memorandum of its Right of First Refusal with the DuPage County, Illinois Recorder of Deeds.

Bahary defaulted on its loan obligations. Banco filed a foreclosure case against Bahary in 2010 in the DuPage County, Illinois Court; the case number is 2010 CH 004918.

The Debtor filed for relief under chapter 11 of the Bankruptcy Code on October 14, 2011. Banco's foreclosure case was stayed by the automatic stay of section 362 of the Bankruptcy Code.

The confirmed Plan provided, in part, that the Reorganized Debtor would surrender the Grand Avenue Property to Banco by executing a Deed in Lieu of Foreclosure to satisfy Banco's secured claim. *See* Article IV of the Debtor's Second Amended Plan of Reorganization, section 4.01, Treatment of Claims and Interests Under the Plan, Class 1B, Secured Claims - Surrender of Properties. Docket Number 310, p. 4. With the Plan confirmed, Bahary transferred the property to Banco, and at some point Banco sold the property to GJV.

On June 30, 2014, after Napleton learned that the property had been transferred and well

-8-

after the close of Bahary's bankruptcy, Napleton filed the aforementioned Verified Complaint in

Chancery for Equitable Relief and Damages in Illinois state court against Windy City, Bahary,

Banco and GJV.  By all indications, Napleton first became aware of Bahary's bankruptcy when

Bahary's counsel informed Napleton's counsel of it by letter dated July 18, 2014.  The letter

warned that sanctions were available for actions against Bahary that violated the discharge

injunction. (Napleton Ex. 13).    A series of letters between Ms. Gould and Mr. Robert

Benjamin, Bahary's bankruptcy counsel, followed.  Mr. Benjamin asserted Bahary's protection

under the discharge injunction; Ms. Gould made requests for various documents while also

informing Mr. Benjamin of the status of the state court lawsuit.  She continued the state court

lawsuit while she determined how to respond to the news of Bahary's bankruptcy.

      At trial Ms. Gould testified that because she had no knowledge of bankruptcy law, she

sought advice from outside bankruptcy counsel.  Her bankruptcy counsel provided Napleton and

Ms. Gould with an opinion letter that concluded that there was no violation of the discharge

injunction and advised the following:

> At this point the next step would be to correspond with Bahary's counsel and
> inform him, based upon the foregoing facts and case law, that Napleton is not
> violating the discharge injunction. Since the bankruptcy is closed, anyone wishing
> to reopen the case must file a motion to do so and pay the $260.00 filing fee. You
> could take that route and file a motion to lift the automatic stay and for
> determination of the status of the [right of first refusal]. Bahary's counsel would
> then likely file a cross-motion for sanctions for stay violation. You also could just
> send the letter to Bahary's counsel and see what he does. He may not bring the
> motion for sanctions if he checks out your arguments and case law. If he wants to
> proceed, let him go to the effort of opening the case and paying the filing fee.

Napleton Enterprises LLC's and Rachel A. Gould's Ex. 18.

On August 19, 2014, Ms. Gould sent a letter via email and facsimile to Mr. Benjamin outlining Napleton's position that its rights were not affected by the bankruptcy, including supporting statutes and case law. She asked Mr. Benjamin to review her findings and to respond if he disagreed. Neither Mr. Benjamin nor anyone else representing Bahary responded to Ms. Gould's letter or to the state court lawsuit.

In the absence of a response, Ms. Gould moved for a default against Bahary; an order of default was entered on September 29, 2014. The same day, Bahary brought the Motion herein against Napleton and Ms. Gould. Shortly thereafter Banco moved to join the motion; GJV later moved to intervene.

## IV. Discussion

### A. Notice

The issues herein arise in large part from a lack of notice. Notice should have been given to all potential claim holders and interest holders so as to maximize the effect of the discharge and to ensure the due process rights of all parties affected by the bankruptcy case.

A party is entitled to notice of any legal proceeding that seeks to potentially deprive or augment said party's rights. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). This is especially true in bankruptcy; Bahary should have scheduled Napleton as a potential claim holder whose rights could have been affected by the bankruptcy.[1]

---

[1] There are issues that trouble the Court about the way Bahary conducted its bankruptcy. For example, *see* Settlement and Deed in Lieu of Foreclosure Agreement, Dkt. 266, ¶ 7.4, where the Debtor warrants that it held the property in "sole and complete legal and equitable title . . . and there are no options, options to purchase, lease options, *rights of first refusal* or equitable rights of any party other than [the Debtor]." (emphasis added). The Court finds this troubling considering that both Bahary (who bought the property and agreed to the right of first refusal, although the right of first refusal was included only in the Sale Agreement, not the deed) and Banco (who financed the purchase) should have known of the right. Bahary made "an absolute conveyance and transfer of all [Bahary's] right, title, and interest therein, in fact as well as in form," which could hypothetically include the right of first refusal. *Id.* at ¶ 3.2.

However, Napleton is also responsible for its predicament. Napleton knew that it might be acting in violation of the discharge injunction and a confirmed Plan when it obtained the default order. While Napleton's bankruptcy counsel concluded that there was no discharge of the right of first refusal, the crux of his advice was to come to this Court for a determination of the parties' rights. Napleton should have done so. The Court must determine whether Napleton violated the discharge injunction (or acted in civil contempt of the confirmation order) by going forward with its state court action when it filed the lawsuit and when it obtained the September 29, 2014 default order.

### B. The Right of First Refusal

Analysis of this problem begins with the Court's previous orders at Docket Numbers 417 and 423. Those orders clarified Napleton's rights under the right of first refusal and determined whether those rights, if any, impacted the bankruptcy proceeding. The Court found that Napleton's right of first refusal was subject to two conditions: (1) Bahary's desire to sell the property and (2) Bahary receiving from a third party a bona fide offer to purchase. *Bahary*, 523 B.R. at 648. Because the Deed in Lieu of Foreclosure transaction was not a bona fide offer from a third party to purchase the property, Napleton's right of first refusal was not triggered and for that reason Napleton had no recourse against Bahary. Napleton has not cited to any authority that Banco is a third party or stranger to the transfer it financed.

Napleton had neither a right to injunctive relief nor a right to payment. Without a right to payment there can be no claim. *See* § 101(5). Without a claim, Napleton could not receive distributions from the bankruptcy estate and would not have been allowed to vote on the plan. In short, Napleton would not have been able to assert its right of first refusal in the bankruptcy case.

-11-

The lack of notice amounts to harmless error because Napleton's right of first refusal, being

inchoate as of 2012, could not affect the outcome of the bankruptcy case. For that reason the

Court finds that the procedural irregularity - lack of notice to Napleton of the bankruptcy case -

did not affect the substantial rights of the parties. *Kane v. Johns-Manville Corp.*, 843 F.2d 636,

647 (2d Cir. 1988) ("The harmless error rule has been invoked in the bankruptcy context where

procedural irregularities . . . would not have had an effect on the outcome of the case.").

### C. Scope of § 524(a)(2)

Section 524(a)(2) states that the discharge of a debt operates as "an injunction against the

commencement or continuation of an action, the employment of process, or an act, to collect,

recover or offset any such debt as a personal liability of the debtor, whether or not discharge of

such debt is waived; . . . . " 11 U.S.C. § 524(a)(2). However, the broad scope of § 524(a)(2) does

not protect against all post-discharge collection actions taken against debtors. For example, a

debtor can be included as a nominal party in lawsuits for purposes of collecting from insurance

assets. *See, e.g., Int'l Business Machines v. Fernstrom Storage and Van Co. (In re Fernstrom)*,

938 F.2d 731, 734–35 (7th Cir. 1991). Nor is every action to collect stayed. A creditor is not

prevented from collecting on a debt that was not discharged, either by seeking to have the debt

held to be nondischargable on various grounds under § 523(a)(1) through (a)(19), including

§ 523(a)(3) if the debt was not timely scheduled. *See* 11 U.S.C. § 523(a)(3); *Kewanee Boiler*

*Corp.*, 297 B.R. at 730–31 (discussing the importance of notice, noting that the lack of notice

may preclude a creditor's claim from being discharged). In addition, a creditor is not barred from

pursuing claims that arise post-petition.

-12-

When questions arise as to the application of the automatic stay or discharge injunction to a transaction, it is best for a creditor to seek relief from the bankruptcy court.  As one bankruptcy judge sagely noted:

> Where there is uncertainty regarding the appropriate action with respect to a debt, the creditor should seek an adjudication in the bankruptcy court . . .  A creditor takes a calculated risk, under threat of contempt of § 524 or sanctions under the § 362 automatic stay where it undertakes to make its own determination of what the stay or discharge in bankruptcy means.

*In re Gray,* 97 B.R. 930, 936 (Bankr. N.D. Ill. 1989) (citations omitted).

### D.  Violation of the Discharge Injunction

Bahary argues that the filing of the DuPage County state court action was a violation of the discharge injunction.  The Court must turn to Napleton's state court complaint to see if there was a violation of the discharge injunction.  Napleton's eight-count state court complaint requests the following:

- Count I seeks a declaratory judgment against all defendants as to Napleton's rights under the Right of First Refusal;
- Count II seeks damages for Breach of Contract against Windy City;
- Count III seeks damages for breach of contract against Bahary;
- Count IV seeks damages for breach of contract against Banco;
- Count V seeks, in the alternative to Count IV, damages for tortious interference with a contract against Banco;
- Count VI seeks damages for tortious interference with a prospective economic advantage against Grand Joint Venture;
- Count VII seeks specific performance against both Banco and Grand Joint Venture; and

-13-

- Count VIII seeks, as an alternative to Count VII, to impose a constructive trust on Grand
  Joint Venture

Motion to Reopen and Rule to Show Cause, Dkt. 398, Ex. 1.

Of the eight counts only Counts I and III seek relief from the Debtor.  Only Count III

seeks damages from the Debtor.

### 1. Seeking Declaratory Judgment Does Not Violate the Discharge Injunction

Count I, the declaratory judgment request, does not violate the discharge injunction.  The

Seventh Circuit has noted that "[p]ermitting a suit to obtain a declaration of liability against a

debtor is not equivalent to authorizing the recovery of a barred claim in a bankruptcy

proceeding." *Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 180 (7th Cir. 1994).  Other courts have

agreed that an order seeking a clarification or determination of one's rights is not an attempt to

collect and therefore is not a violation of the discharge injunction.  *See In re Taylor*, No. 13 C

07743, 2014 WL 4297238, at *5-6.  (N.D. Ill. Aug. 29, 2014) (holding that a creditor seeking a

state court declaratory judgment regarding her rights so as to be able to proceed in an adversary

proceeding in bankruptcy court did not violate the discharge injunction); *see also Bank One*

*Wisconsin, N.A. v. Annen (In re Annen)*, 246 B.R. 337, 338-40 (8th Cir. BAP 2000).  In Count I

Napleton is seeking only a determination of its rights under the right of first refusal.  Because no

steps are taken there to collect a debt, Napleton and its attorney did not violate the discharge

injunction or commit civil contempt regarding Count I.

### 2. There Cannot be a Violation of the Discharge Injunction for Collection Efforts by an Entity Without Notice

Count III, however, tells a different tale. This count requests damages; it is an attempt to collect on a debt. However, to violate the discharge injunction the creditor must seek to collect a discharged debt. As noted previously herein "[i]t is well-established that the debtor's failure to schedule or notify a creditor of a Chapter 11 proceeding and the confirmation hearing precludes the creditor's claim from being discharged in the bankruptcy proceeding." *Kewanee Boiler Corp.*, 297 B.R. at 730 (citing *Reliable Electric Co., Inc. v. Olson Construction Co.*, 726 F.2d 620 (10th Cir.1984)); *see also In re Maya Construction Co.*, 78 F.3d 1395 (9th Cir.1996); *In re Toth*, 61 B.R. 160, 165 (Bankr. N.D.Ill. 1986). Moreover, a "creditor's claim cannot be subjected to a confirmed plan that it had no opportunity to dispute." *Id*. There is no question that Napleton was neither listed on Bahary's schedules, nor given notice of the bankruptcy. Napleton first knew of the bankruptcy when its counsel received the July 18, 2014 letter from Bahary's counsel, after the lawsuit was filed. Without notice, Napleton's claim or interest would not have passed through the bankruptcy, and its actions to collect on it would not be a violation of the discharge injunction.

Bahary gets around this issue by arguing Napleton never had a claim to begin with and therefore was not entitled to notice. This was the subject of the Court's prior order. *Bahary*, 523 B.R. at 649. Bahary argues that Napleton's right of first refusal was an inchoate right that never vested. The Court accepted this argument. Because it did not have a vested right, Napleton did not have a right to performance or payment of damages from the debtor (or its transferee Banco). Bahary's failure to provide notice to Napleton of its bankruptcy case has placed it in a bind.

-15-

Either Napleton had a pre-petition claim which could not have been discharged due to a lack of notice in which case its attempt to collect could not violate § 524(a)(2), or Napleton did not have a vested pre-petition claim which may mean that the attempt to collect is not on account of a discharged debt and likewise may not violate § 524(a)(2). Bahary appears to have taken the latter position. However, considering all of the circumstances herein, especially the lack of notice to Napleton, the Court is unwilling to conclude that there was a violation of the discharge injunction or conduct performed in civil contempt of a court order. Therefore, Napleton and Attorney Rachel A. Gould will not be found to have violated the discharge injunction and neither Napleton nor Attorney Rachel A. Gould will be held in civil contempt of court for violating a court order.

## V. Anti-Injunction Act

Napleton argues that the Anti-Injunction Act ("Act") prohibits this Court from enjoining proceedings in a state court. That provision states that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. This Court's October 10, 2014 order that enjoined the state court case and the orders entered herein on March 25, 2015, come within the exceptions noted in the Act for injunctions "expressly authorized by Act of Congress" and "where necessary in aid of its jurisdiction." Section 105 of the Bankruptcy Code is such an Act of Congress. That section allows a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. In *Parker v. Goodman (In re Parker),* 499 F.3d 616, 626-28 (6th Cir. 2007), the Sixth Circuit noted that "courts have widely

-16-

affirmed that the 'expressly authorized' exception to the Anti-Injunction Act includes injunctions authorized under the bankruptcy laws."

Issuance of this Court's order requiring Napleton to dismiss two defendants in the DuPage County action is necessary to enforce its findings that at the time of confirmation the Debtor and Banco owed Napleton nothing regarding its right of first refusal.

## VI. The Motions to Intervene and Join
Federal Rule of Bankruptcy Procedure 2018(a) provides that

> [i]n a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter.

Federal Rule of Bankruptcy Procedure 2018(a).

### A. Banco's Motion to Join

Banco asserts that it is also a defendant in the 2014 CH 001212 DuPage County, Illinois case that the Debtor's Motion addresses, the basis of which is Napleton's alleged right of first refusal, which this Court has held to be of no consequence. This Court will allow Banco to intervene in the Debtor's Motion pursuant to Fed. R. Bankr. P. 2018(a). Banco was a secured creditor in this bankruptcy case. *See* Claims Register, Claim No. 4 in the amount of $10,421,027.81. Its claim has been provided for in the confirmed plan.

Ordinarily a bankruptcy court would have no authority to resolve claims of third parties regarding the Debtor's assets. However, Banco is not a third party; it was a creditor whose claim was covered by the Plan. Ruling on Banco's concerns herein involves interpreting the confirmed Plan's provisions. As noted above, bankruptcy courts have core jurisdiction to interpret and

-17-

enforce their injunctions. That includes determining whether Banco is protected by the Plan as the Debtor's transferee. When Banco received the Deed in Lieu of Foreclosure it succeeded to the Debtor's rights and obligations regarding the Grand Avenue Property, which did not include an obligation regarding the unripe right of first refusal. Banco has an interest in this Court's resolution of Bahary's Motion.

This Court has jurisdiction to decide whether Napleton's right of first refusal applies to the transfer to Banco. *See In re Brown's Chicken & Pasta, Inc.*, 503 B.R. 86, 90 (Bankr. N.D. Ill. 2013) (bankruptcy court found to have authority to interpret its order confirming a plan to determine whether items in dispute were covered by a bankruptcy sale). Napleton has not alleged that Banco owes it obligations or duties independent of those owed it by Bahary.

### B. 334 Grand Joint Venture, LLP's Motion to Intervene

Banco's transferee GJV is not entitled to intervene. It may be an interested party under Fed. R. Bankr. P. 2018(a) whose rights may be at stake herein. However, the issues involving Napleton with respect to GJV are third party claims under state law that do not impact the bankruptcy estate; GJV's claims and rights were not impacted by the confirmed Plan. For that reason, this Court has no authority to resolve Napleton's claims involving GJV. This Court had to interpret the confirmed Plan's provision which stated that the property in issue would be transferred to Banco by way of a Deed in Lieu of Foreclosure. However, Banco's transfer to GJV was not connected to the bankruptcy case. GJV was not a creditor of the bankruptcy estate.

## VII. Right of First Refusal as a Covenant Running with the Land

Napleton mentioned in one of its pleadings that the right of first refusal ran with the land. *See Napleton Enterprises, Inc.'s And Rachel A. Gould's Motion for Relief from Judgment or Order Per Rule 9024,* Docket Number 418, p. 18. The Court recalls the January 27, 2015 testimony of Napleton's Director of Real Estate, Mr. Brandstatter (for which there is no transcript), that the right of first refusal was mentioned only in the Sale Agreement and that it was not included in the deed that transferred the Grand Avenue Property to Bahary in 2004. Is the Memorandum of the Right of First Refusal recorded by Napleton in 2006 part of the chain of title? This issue has not been fully developed; for that reason it may have been waived. In any event, this Court's ruling that the right of first refusal was not effective without an offer to purchase the property from a third party obviates discussion of this problem.

## VIII. Conclusion

The Court has found that neither Bahary nor its transferee Banco owed Napleton anything with regards to the right of first refusal. Napleton's right of first refusal was not triggered in this bankruptcy proceeding. However, Napleton Enterprises, LLC, directly and as a Beneficial Owner under Standard Bank and Trust Company, as Trustee Under Trust Agreement dated January 7, 2003 and Known as Trust Number 17569 will be required, pursuant to § 105 of the Bankruptcy Code, by separate order to dismiss defendants the Michael Bahary and Steven Bahary Partnership and the Popular Community Bank Foundation, Inc. a/k/a Banco Popular North America with prejudice from DuPage County, Illinois lawsuit Number 2014-Ch-001212 on or before April 25, 2015. The Court orders this to achieve Bahary's reorganization goals, as the

reorganized Debtor should not be burdened with defending a matter where the complainant is

pursuing a baseless claim.

The orders entered herein on March 25, 2015 at Docket Numbers 441, 442 and 443 stand.

Dated: April 1, 2015                    ENTER:


                                        _Jacqueline P. Cox_

                                        Jacqueline P. Cox

                                        U.S. Bankruptcy Judge